UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
OCT 0 4 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-664-GWU

DONALD K. NICHOLSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment, as well as the plaintiff's motion to remand.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The administrative law judge (ALJ) found that the plaintiff had degenerative disc disease at L4-S1, osteopenia of the feet bilaterally, degenerative disc disease at C5-6, a history of tumor to the right eye with removal and prosthesis, a major depressive disorder, and a history of opioid and cannabis dependence currently in sustained full remission as of the Date Last Insured in March, 2005. (Tr. 19, 222). The plaintiff was said to be restricted to a limited range of light level work and would be unable to perform past relevant work. (Tr. 20-21, 23). However, a vocational expert (VE) identified a significant number of alternative jobs which were possible for an individual with the plaintiff's vocational profile and, thus, the claim for benefits was denied. (Tr. 22-23).

The plaintiff alleged that he had been disabled since September, 2001 (Tr. 47), but the administrative transcript does not document any treatment or professional evaluation of the plaintiff's physical or mental status between August,

1999 through March, 2002. (Tr. 1A-3). Moreover, the only record from 2002 was an initial evaluation by a social worker,[1] which yielded a diagnosis of a major depressive disorder, single, episode and "R/o substance induced mood disorder"[2] (Tr. 158); the cited GAF, presumably attributable to a combination of the conditions, ranged up to 60, which was consistent with generally moderate symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV). The plaintiff did not keep his follow up appointment (Tr. 157) and the social worker merely noted in January of the next year that the plaintiff was capable of managing benefits in his best interest. (Tr. 156). No other records existed for the next month. Thus, particularly given the fact that the vocational expert addressed the vocational impact of a number of "limited but satisfactory" mental limitations (Tr. 319), the administrative decision to deny benefits for the period through February, 2003 is affirmed.

As to the period after February, 2003, the ALJ did not adequately analyze the plaintiff's physical restrictions. Dr. Mark Carter performed a one-time consultative examination, finding only mild crepitation in the right knee and decreased reflexes

---

[1]A social worker is not an "acceptable medical source" according to 20 C.F.R. Section 404.1513.

[2]Substance abuse is no longer an appropriate basis for an award of benefits as per Publ. L. 104-121. Thus, the impact of this impermissible condition has not been separated out.

(Tr. 160, 161) as the only abnormalities; however, Carter did not perform any testing ourside the course of a physical examination (Tr. 161) and did not mention any specifics from prior medical records to indicated that he had reviewed any such records (Tr. 159-160). The only non-examining medical reviewer assessing the plaintiff's physical status cited Carter's evaluation (Tr. 221, 222) and evaluated the record prior to the introduction of extensive records from Treating Physician Neeraj Mahboob and Greg Wheeler.

Dr. Mahboob saw the plaintiff beginning in March, 2004. (Tr. 2). Mahboob completed a residual functional capacity assessment from citing numerous severe restrictions including, for example, restrictions of physical functions and postural activities (Tr. 284, 285) due to conditions such as osteopenia, cervalgia, and degenerative disc disease of the lumbar spine (Tr. 284). The record shows that the doctor had ordered a cervical MRI, several months before completing the form, which showed degenerative disc space narrowing at C5-6, with associated spur formation on the endplates, and a small disc protrusion at C5-6. (Tr. 252). Osteopenia was diagnosed by testing. (Tr. 253). Earlier in the year, Mahboob had ordered (Tr. 260, 261, 263) x-rays of the hands, feet and lumbar spine which had shown osteopenia and other abnormalities (Tr. 259, 261, 263). Thus, the treating physician's assessment certainly was not without objective evidence supporting it,

and neither of the two other physicians (i.e., Carter and Ross) had seen or commented on Mahboob's opinions, records or test results.

Moreover, the ALJ emphasized that "at no time" did Mahboob refer the patient for physical therapy or surgery. (Tr. 16). Yet the doctor did refer the plaintiff for pain management treatment with Dr. Wheeler. (Tr. 299, 301). He also prescribed pain medications such as Lorcet and Ultracet[3], which were similar to medications which Dr. Wheeler later stated would prevent the plaintiff from operating machinery or driving (Tr. 299, 300)[4], a restriction also not addressed by the ALJ.

Finally, the ALJ misquoted some of Mahboob's MRI evidence, and indeed erroneously referred to crepitation as being associated with the MRI results. (Tr. 20). Thus, Mahboob's opinion (and that of Dr. Wheeler) were not properly evaluated for the period after February, 2003.

The hypothetical question also does not appear to reflect the specific limitations of the only mental health examiner to make specific functional capacity statements. In March, 2003, Consultative Examiner Pamela Starkey specifically stated that Nicholson was "likely to respond with depressive and hypomanic

---

[3]According to the Physician's Desk Reference (60th Ed.) ( PDR) at p. 2462 , Ultracet is for short term management of "acute" pain.

[4]Wheeler prescribed Lortab, which was for moderate to moderately severe pain as per the PDR at p. 3315. Lorcet has 150 milligrams more of Acetaminophen than Lortab. PDR at p. 1199.

symptoms under the pressures found in a day to day work setting" and that social interactions were likely to be somewhat unpredictable, while he would likely have mild difficulty handling even simple one and two step instructions. (Tr. 170). Despite the "great weight" given to this examiner's opinion by the non-examining medical reviewer (Tr. 225), the discrepancies in opinions regarding the ability to perform simple instructions and work with others, for example (Tr. 223-225) was never addressed or explained. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Moreover, a treating source cited a GAF of 55 (Tr. 201), whcih suggested at least moderate symptoms. Thus, the mental restrictions after February, 2003 were inadequately assessed.

The decision will be affirmed with regard to the period before March, 2003, and remanded for further consideration with regard to the later period.[5]

This the 4 day of October, 2006.

G. WIX UNTHANK,
Senior Judge

---

[5]As the case is being remanded anyway, the Court shall not specifically rule on the plaintiff's motion to remand. The plaintiff shall presumably be allowed to introduce additional evidence which may "relate back" to the period before the DLI